[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10928
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cr-00034-WTH-PRL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

RAUL DAGOBERTO CONTRERAS,
a.k.a. Raul Dagoberto Flores-Contreras,
a.k.a. Raul Dagoberto Flores,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 2, 2014)

Before CARNES, Chief Judge, MARTIN and FAY, Circuit Judges.

CARNES, Chief Judge:

The sole question in this case is whether second-degree sexual battery under Florida law, Fla. Stat. § 794.011(5), is a "crime of violence" under United States Sentencing Guideline § 2L1.2(b)(1)(A). The district court determined that it was not and therefore declined to apply the 16-level enhancement that the guidelines provide for prior convictions of such crimes.  The government appeals the district court's refusal to apply the guidelines enhancement, arguing that second-degree sexual battery qualifies as a "crime of violence."

## I.

Raul Dagoberto Contreras, a national of El Salvador, pleaded guilty to illegally reentering the United States after removal for committing an aggravated felony, in violation of 8 U.S.C. § 1326.  The probation office generated a presentence investigation report (PSR), which assigned Contreras a base offense level of 8 under U.S.S.G. § 2L1.2(a).  Because Contreras had previously been convicted of second-degree sexual battery under Fla. Stat. § 794.011(5), and because the probation office determined that this offense qualified as a "crime of violence," it recommended a 16-level increase in Contreras' base offense level under U.S.S.G. § 2L1.2(b)(1)(A).  After a 3-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1(a)-(b), the probation office calculated a total offense level of 21.  That offense level, coupled with Contreras' criminal history category of VI, yielded a guidelines range of 77 to 96 months of imprisonment.

2

Contreras objected to the 16-level enhancement, arguing that this sexual battery offense is not a "crime of violence" under § 2L1.2(b)(1)(A), but only an "aggravated felony" under subsection (b)(1)(C).  Under U.S.S.G. § 2L1.2(b)(1)(C), a conviction for an aggravated felony warrants only an 8-level increase in the defendant's base offense level.  The government countered that sexual battery is a crime of violence because it involves sexual contact without consent.

At sentencing, the district court noted that conviction under the Florida statute does not require physical force or violence.  Because the court understood the term "crime of violence" to require "something more than a nonconsensual touching," it determined that the 16-level enhancement recommended by the probation office was unwarranted.  The district court further reasoned that, because we have not decided whether Florida's sexual battery offense is a crime of violence, it was "required to resolve this in favor of the defendant."  As a result, the court sustained Contreras' objection to the 16-level enhancement and replaced it with an 8-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C).[1]  The district court calculated Contreras' offense level to be 13, which resulted in a guidelines

---

[1] Contreras requested the 8-level enhancement applicable to "aggravated felonies" in his written objection to the PSR.  At sentencing, however, he argued that his prior conviction did not qualify even as an "aggravated felony" and that he should have only received a 4-level enhancement for being convicted of "any other felony" under U.S.S.G. §2L1.2(b)(1)(c).  Contreras has not appealed the district court's application of the 8-level "aggravated felony" enhancement.

3

range of 33 to 41 months imprisonment, and sentenced him to 36 months imprisonment.

## II.

"We review <u>de novo</u> whether a defendant's prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines." <u>United States v. Diaz-Calderone</u>, 716 F.3d 1345, 1348 (11th Cir. 2013) (citation omitted). In making that determination, we generally apply the categorical approach first articulated by the United States Supreme Court in <u>Taylor v. United States</u>, 495 U.S. 575, 110 S.Ct. 2143 (1990). <u>United States v. Palomino Garcia</u>, 606 F.3d 1317, 1336 (11th Cir. 2010). The categorical approach compels us to "look only at the fact of conviction and the statutory definition" to determine whether a conviction under the statute would necessarily constitute a crime of violence. <u>United States v. Romo-Villalobos</u>, 674 F.3d 1246, 1248 (11th Cir. 2012). Under certain circumstances, we will also apply a "modified categorical approach," but neither party has requested the use of such a standard in this case.[2] <u>Palomino Garcia</u>, 606 F.3d at 1336.

When construing the meaning of sentencing guidelines, we are bound by the guidelines commentary. The commentary is "authoritative unless it violates the

---

[2] Because <u>Descamps v. United States</u>, — U.S. —, 133 S.Ct. 2276 (2013), primarily addresses when it is proper to use the modified categorical approach and we decide the case now before us using the categorical approach, the limitations set forth in <u>Deschamps</u> play no part in our analysis.

Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" United States v. Cortes-Salazar, 682 F.3d 953, 954 (11th Cir. 2012) (quotation marks omitted); see also United States v. Wilk, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines.") (quotation marks omitted).

## III.

## A.

The guidelines require a sentencing court to enhance the base offense level of a defendant convicted of illegal reentry by 16 if the defendant was previously deported after being convicted of a "crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The commentary accompanying this guideline defines a "crime of violence" as, among other things:

> forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor. . . or any other offense under federal, state, or local law which has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).  The parenthetical statement delineating the scope of "forcible sex offenses" was added by the Sentencing Commission in 2008 (the "2008 Amendment").  That amendment took effect nearly four years before the arrest of Contreras that led to the sentence at issue here.

5

Under Florida law, sexual battery means "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." Fla. Stat. § 794.011(1)(h). The second-degree felony of which Contreras was convicted is established when a person "commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof does not use physical force and violence likely to cause serious personal injury." Id. § 794.011(5). Consent, in turn, is defined as "intelligent, knowing, and voluntary consent" and does not include coerced submission. Id. § 794.011(1)(a).

We have not yet decided whether a conviction under Florida's second-degree sexual battery statute is a "crime of violence" for the purposes of U.S.S.G. § 2L1.2. However, we have held that a conviction for any of the offenses enumerated in U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) — which includes "forcible sex offenses" — qualifies as a "crime of violence," regardless of whether the use of physical force is an element of the crime. Palomino Garcia, 606 F.3d at 1327. Thus, if we determine that Florida's second-degree felony of sexual battery is a "forcible sex offense," then it is also a "crime of violence."

## B.

Contreras argues that the sexual battery offense of which he was convicted is not categorically a crime of violence under U.S.S.G. § 2L1.2. The focal point of

6

his argument is that, because § 749.011(5) does not require any sort of force —
other than the force necessary to achieve "penetration" or "union" — it is not a
forcible sex offense or a crime of violence. See Fla. Stat. § 794.005 ("[I]t was
never intended that the sexual battery offense described in [§] 794.011(5) require
any force or violence beyond the force and violence that is inherent in the
accomplishment of 'penetration' or 'union.'"). The very text of the statute makes
clear that it deals with nonconsensual sexual contact in which a person "does not
use physical force and violence likely to cause serious personal injury." Id. §
794.011(5). Contreras points out that nonconsensual "union" of sexual organs is
sufficient for a conviction under the statute and that "union" has been defined as
mere "contact." See State v. Pate, 656 So. 2d 1323, 1325–27 (Fla. 5th DCA 2010).
To say that "illicit non-consensual sexual conduct" is a "forcible sex offense,"
Contreras argues, is "to read 'forcible' out of 'forcible sex offenses.'" We
disagree.

The 2008 Amendment to §2L1.2 unambiguously defines as a "crime of
violence" any forcible sex offense "where consent to the conduct is not given or is
not legally valid, such as where consent to the conduct is involuntary, incompetent,
or coerced," and it includes "statutory rape." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).
That this definition includes sex offenses like second-degree sexual battery under
Florida law is evidenced by the Sentencing Commission's explanation for the 2008

7

Amendment:  "The amendment makes clear that forcible sex offenses. . . are always classified as 'crimes of violence,' regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. App. C., Amend. 722 (2011) (citing U.S.S.G. App. C., Amend. 658 (2011)).  It may seem odd that the term "forcible sexual offenses" is defined to include crimes that do not have physical force as an element but, as Toni Morrison observed, "Definitions belong to the definers, not the defined."  Toni Morrison, Beloved 190 (1987); see also Stansell v. Revolutionary Armed Forces of Colombia, 704 F.3d 910, 915 (11th Cir. 2013) ("In general, statutory definitions control the meaning of a statute's terms.").  The definer in this instance is the Sentencing Commission which authored the 2008 Amendment the meaning of which could hardly be any clearer.

The Sentencing Commission's discussion of case law provides additional support for the proposition that Contreras' offense qualifies as a "forcible sex offense" and, thus, a "crime of violence."  As the Commission explains, the 2008 Amendment clarifies that the scope of "forcible sex offenses" includes crimes where there is "assent in fact but no legally valid consent."  U.S.S.G. App. C., Amend. 722 (2011).  The examples the Commission cites are United States v. Gomez-Gomez, 493 F.3d 562, 564 (5th Cir. 2007), where the Fifth Circuit held that a prior conviction under California's forcible rape statute was not a "crime of

8

violence" because it allowed for "rape by deception,"[3] and United States v.

Sarmiento-Funes, 374 F.3d 336, 341 (5th Cir. 2004), which excluded from the

definition of "crime of violence" a Missouri sexual assault statute because it

allowed for conviction where the victim assented while intoxicated.  Both of those

decisions preceded the 2008 Amendment.

The pre-amendment definition of "forcible sex offenses" did not include the

parenthetical "(including where consent to the conduct is not given or is not legally

valid, such as where consent to the conduct is involuntary, incompetent, or

coerced)."  Construing the pre-amendment definition, the Fifth and Ninth Circuits

held that sex offenses involving nonconsensual sexual contact could not be

categorically classified as "crimes of violence" if they did not require some level of

physical force.  United States v. Beltran-Munguia, 489 F.3d 1042, 1051 (9th Cir.

2007) ("[B]ecause [the Oregon statute] does not make 'the use, attempted use, or

threatened use of physical force' an element of the crime. . . [defendant's] prior

conviction does not qualify as a 'crime of violence. . . .'"); Sarmiento-Funes, 374

F.3d at 341 ("Since some (though not all) methods of violating the Missouri statute

do not require the use of physical force against the victim, the statute therefore

does not have, as an element, the use of physical force against the person of

---

[3] The example of "rape by deception" the court gave was an employer threatening to fire an employee unless the employee had sex with him.  That conduct would be sufficient to convict under the California statute at issue in that case, but the Fifth Circuit concluded that it would not be a forcible sex offense under the sentencing guidelines.  Gomez-Gomez, 493 F.3d at 567.

another."). Nor could such crimes be "forcible sex offenses." Beltran-Munguia, 489 F.3d at 1051 ("Not surprisingly, given its language, we have interpreted the phrase 'forcible sex offenses' as requiring the use of force."); Sarmiento-Funes, 374 F.3d at 344 ("[T]he adjective 'forcible' centrally denotes a species of force that either approximates the concept of forcible compulsion or, at least, does not embrace some of the assented-to-but-not-consented-to conduct at issue here.").

After the 2008 Amendment, however, both of those circuits changed their tunes. The Fifth Circuit recognized that "the amended definition of forcible sex offense has supplanted this Circuit's previous definition of the term," United States v. Diaz-Corado, 648 F.3d 290, 294 (5th Cir. 2011), and held that a defendant who "engag[es] in sexual conduct with an individual who cannot legally give consent because of physical ailment or mental illness" commits a "forcible sex offense," United States v. Herrera, 647 F.3d 172, 179 (5th Cir. 2011). Meanwhile, the Ninth Circuit has held that, "under the 2008 Amendment, indicia of additional force or violence [are] no longer required for the enhancement so long as consent to the sex offense was shown to be lacking." United States v. Gallegos-Galindo, 704 F.3d 1269, 1272 (9th Cir. 2013). Other circuits' rulings on the issue have also defined "forcible sex offense" to include nonconsensual sexual contact that does not involve physical force beyond the sexual contact itself. See United States v. Rangel-Castaneda, 709 F.3d 373, 380 (4th Cir. 2013) (concluding that, under the

10

amended definition of "forcible sex offense," the "requisite compulsion need not be physical in nature"); United States v. Reyes-Alfonso, 653 F.3d 1137, 1142 (10th Cir. 2011) ("[W]hen an offense involves sexual contact with another person, it is necessarily forcible when that person does not consent.") (quotation marks omitted).[4]

Applying this definition of "forcible sex offense," the conclusion that Fla. Stat. § 794.011(5) qualifies as a "crime of violence" is inescapable.  In order to be convicted under the statute, a defendant must have committed an act of sexual contact or penetration without the victim's consent.  See Khianthalat v. State, 974 So. 2d 359, 362 (Fla. 2008) ("To constitute sexual battery under [§ 794.011(5)], the State must prove the victim did not consent.").  Because consent under Florida law does not include "coerced submission" and must be "intelligent, knowing, and voluntary," Fla. Stat. § 794.011(1)(a), any nonconsensual sexual contact will satisfy the guidelines definition of "forcible sex offense," which includes situations in which "consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. . . ."  U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

---

[4] Even before the 2008 Amendment and its decision in Reyes-Alfonso, the Tenth Circuit had determined that nonconsensual sexual contact was a forcible sex offense regardless of whether the crime required physical compulsion.  See United States v. Romero-Hernandez, 505 F.3d 1082, 1089 (10th Cir. 2007).  It merely reaffirmed that judgment in Reyes-Alfonso, noting that the 2008 Amendment lent additional support.  The Third Circuit had also reached that conclusion before the 2008 Amendment.  See United States v. Remoi, 404 F.3d 789, 794–96 (3d Cir. 2005).

11

Our conclusion that sexual battery under § 794.011(5) is a "forcible sex offense" and therefore a "crime of violence" is reinforced by the Fifth Circuit's recent decision in United States v. Garza-Guijan, 714 F.3d 332 (5th Cir. 2013).  In that case, the Fifth Circuit was presented with precisely the same issue that we face today — whether a violation of § 794.011(5) qualifies as a "crime of violence" under U.S.S.G. § 2L1.2.  In holding that it did, the Fifth Circuit explained that the defendant "plainly was convicted of an offense proscribing sexual conduct 'where consent. . . is not given or. . . is involuntary' and this conviction falls squarely within the Guidelines category of 'forcible sex offenses.'"  Id. at 334 (quoting U.S.S.G. § 2L1.2, cmt. n.1(B)(iii)).  We agree.

For these reasons, we conclude that § 794.011(5) falls within the definition of "forcible sex offenses" and is a "crime of violence" under U.S.S.G. § 2L1.2.

C.

The district court therefore erred by applying only an 8-level enhancement to Contreras' base offense level.  In making that determination, the district court apparently relied on precedent from the Supreme Court which held that a defendant's prior battery conviction under Florida law was not a "violent felony" under the Armed Career Criminal Act (ACCA).  Johnson v. United States, 559 U.S. 133, 130 S.Ct. 1265 (2009).  However, the Supreme Court in Johnson was dealing with a different issue — the definition of "violent felony" under the

12

ACCA, not the amended definition of "crime of violence" under U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

The district court's confusion in this respect is understandable, for we have observed that "whether a crime constitutes a 'violent felony' under the ACCA involves an inquiry strikingly similar to that in determining whether a conviction is a 'crime of violence' under U.S.S.G. § 4B1.1(a) inasmuch as the definitions for both are virtually identical." United States v. Harris, 586 F.3d 1283, 1285 (11th Cir. 2009) (quotation marks omitted). However, the sentencing guideline at issue in this case, U.S.S.G. § 2L1.2, "defines 'crime of violence' very differently than the ACCA does," Cortes-Salazar, 682 F.3d at 957, so cases dealing with the definition of a "violent felony" under the ACCA are not applicable here. For this reason, reliance on Johnson is misplaced.

IV.

We vacate Contreras' sentence and remand to the district court for resentencing consistent with this opinion.

**VACATED AND REMANDED.**

13